CORPORATION OF AMERICAS, LTD., d/b/a C.O.A.L., Plaintiff-Appellant,

v.

EXPORT–IMPORT BANK OF WASHINGTON and Aetna Casualty & Surety Company et al., d/b/a Foreign Credit Insurance Association, Defendants-Appellees.

No. 28166.

United States Court of Appeals, Fifth Circuit.

April 15, 1970.

Rehearing Denied May 13, 1970.

**430**

John W. Prunty, Guion T. De Loach, Miami, Fla., for appellant.

William M. O'Bryan, Fort Lauderdale, Fla., William A. Meadows, Jr., U. S. Atty., Miami, Fla., Morton Hollander, Appellate Section, Civil Division, Robert E. Kopp, Atty. Dept. of Justice, Washington, D. C., for appellees.

Before SIMPSON, MORGAN and INGRAHAM, Circuit Judges.

PER CURIAM:

Corporation of Americas, Ltd., d/b/a C.O.A.L. (C.O.A.L.) made a shipment of aircraft engines and parts of a claimed value of about $29,000 to a Chilean airline, Linea Aerea Sud Americana (L.A. S.A.) at Santiago, Chile. C.O.A.L. was insured by Export-Import Bank of Washington (Ex-Im.), a corporate agency of the United States and a co-insurer of thirty private insurance companies doing business under the name of Foreign Credit Insurance Association (F.C.I.A.) against "commercial credit risks" and "political risks" in connection with foreign shipments. L.A.S.A. secured possession of the goods without the shipping documents and with payment in escudos, not in dollars. The dispute between the parties centers around whether or not Ex-Im.'s policy covered C.O. A.L.'s loss. The district court made findings of fact and conclusions of law which denied recovery to C.O.A.L., which are set out at the foot of this opinion as an appendix.

The appellant has failed to demonstrate to us that the findings are clearly erroneous or that the conclusions of law are impermissible under the facts found and applicable law. The judgment is

Affirmed.

## APPENDIX

### FINDINGS OF FACT and CONCLUSIONS OF LAW

(Number and title omitted)

(Filed: March 3, 1969)

This suit to recover on an insurance policy came on for non-jury trial upon the amended complaint and the amended answer. The Court heard testimony, received evidence, heard argument by counsel and considered the proposed findings of fact and conclusions of law presented by counsel. Therefore, the Court makes the following findings of fact and conclusions of law.

### FINDINGS OF FACT

1. Plaintiff, Corporation of Americas, Ltd., is a Florida corporation, and the defendant, Export-Import Bank of Washington, (hereinafter "Ex-Im Bank") is a corporate agency of the United States Government, created under Public Law 87–311, 87th Congress on or about September 26, 1961, and has been operating as a government corporation since that date. Ex-Im Bank is a co-insurer with thirty defendant insurance companies doing business under the name of Foreign Credit Insurance Association (hereinafter "FCIA").

2. Plaintiff was originally known as Domico (Dominican-Miami Co.) of

North Miami, Florida, and on December 2, 1964, and subsequent thereto the name of the plaintiff was changed to Corporation of Americas, Ltd., d/b/a C.O.A.L., which change of name was recognized by an endorsement from the defendants.

3. The defendant jointly issued to the plaintiff Policy No. S–1804 on or about August 13, 1964, and the policy was in full force and effect, together with endorsements, at all times material to this action. The policy provides that defendants would indemnify plaintiff for 85% of the amount of plaintiff's loss caused by "commercial credit risks" and that defendants would indemnify the plaintiff for 95% of plaintiff's loss caused by "political risks".

4. Plaintiff, in November, 1964, shipped a total of $29,584.68 worth of aircraft engines and spare parts to Linea Aerea Sud Americana, a Chilean airline known as L.A.S.A., at Santiago, Chile. The shipments were made through the Inter National Bank of Miami and United Forwarding Service, upon sight drafts attached which required payment in United States Dollars. The contract between the plaintiff and the buyer, L.A.S.A., called for payment by the depositing by L.A.S.A. of an equivalent amount of escudos with the First National City Bank of Santiago, Chile. L.A.S.A. deposited 54,364.80 escudos with the First National City Bank of Santiago, Chile, between November 11 and November 29, 1964.

5. The merchandise involved in this suit was shipped via common carrier, with the delivering carrier being L.A.S.A. At some time after receipt of the merchandise in Chile, L.A.S.A. took possession of these goods as buyer, after having made deposits in escudos, but before the payment of the sight drafts in dollars.

6. In compliance with regulations for importation of goods into Chile, L.A.S.A. obtained an import license from the Central Bank of Chile, which license called for the payment for the shipments to be made in escudos.

7. The Chilean government has at all times material to this complaint and subsequent to November 20, 1964, refused to authorize the exchange of the escudos into United States dollars and the escudos are still being held on deposit at the First National City Bank. As a consequence thereof, the sight draft in dollars remains unpaid.

8. Paragraph V–C of the policy provides that coverage of the policy does not apply "to any shipment sold to a buyer for any currency other than United States dollars." The sight drafts attached to the shipments are evidence of a shipment sold for dollars. The testimony of the General Manager of L.A.S.A. that he was purchasing for escudos; the import permit calling for payment in escudos; and the testimony of the principal of plaintiff that the buyer would pay in escudos to be deposited for future exchange into dollars, are all evidence of shipments NOT sold for dollars. The Court finds that the shipment was made for escudos and not for dollars. However, had the shipment been made for dollars, plaintiff still could not recover.

9. The policy defines "commercial credit risks" in II–A as (1) "insolvency of the buyer", or (2) "failure of the buyer to pay". The Court finds that the buyer paid the gross invoice value in escudos as of the date of deposit and therefore, there was no loss to the Plaintiff due to a commercial credit risk.

10. The policy provides coverage under the political risk section for transfer risks if (II–B–1–b), "the failure of the appropriate exchange authority to transfer local currency into dollars *is not due to the fault of the buyer or his agent,* including but not limited to: (1) the failure to comply with the applicable laws and regulations

for the acquisition and transfer of dollars, including submission of necessary documentation to the exchange authority." L.A.S.A. failed to submit the necessary documents to obtain an import license which would allow for conversion of the escudos into dollars. The Court further finds that after the failure to convert was noted, plaintiff was informed that if the buyer would submit further amended documents, the Central Bank of Chile would amend its import permit (see defendants' exhibits #11 and #14) and might yet permit the conversion of escudos into dollars.

11. The buyer's unexplained method of securing possession of the goods without obtaining the shipping documents held by the First National City Bank of Santiago, Chile, and the method used by the buyer to have the goods released from bond to them does not come within any of the classes of loss insured against under the "Other Political Risks" clause (II–B–2).

## CONCLUSIONS OF LAW

1. This Court has jurisdiction of the parties and the subject matter under removal jurisdiction for suits against federal governmental agencies.

2. The failure of the Chilean government to approve the exchange of escudos into dollars was due to the fault of the buyer and plaintiff is therefore precluded from recovery under the transfer risks of the policy.

3. The buyer's actions in securing possession of the goods without the shipping documents cannot be visited upon these defendants. The provisions of the contract of insurance do not cover the occurrences shown by this record.

4. Plaintiff is not entitled to recover any amounts from the defendants.

Done and Ordered at Miami, Southern District of Florida, this 10th day of February, 1969.

/s/ Joe Eaton
United States District Judge